LEE TRAN & LIANG LLP
James M. Lee (SBN 192301)
 james.lee@ltlattorneys.com
Timothy S. Fox (SBN 280918)
 timothy.fox@ltlattorneys.com
601 S. Figueroa Street, Suite 3900
Los Angeles, CA 90017
Telephone: (213) 612-8900
Facsimile: (213) 612-3773

LEE TRAN & LIANG LLP
Kevin M. Bringuel (SBN 196279)
 kevin.bringuel@ltlattorneys.com
Heather F. Auyang (SBN 191776)
 heather.auyang@ltlattorneys.com
601 Gateway Boulevard, Suite 1010
South San Francisco, CA 94080
Telephone: (650) 422-2130
Facsimile: (650) 241-2142

Attorneys for Defendant
TP-LINK USA Corporation

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| JOE ARROYO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TP-LINK USA CORPORATION, a California corporation, and TP-LINK TECHNOLOGIES CO., LTD., a Chinese corporation,<br><br>Defendants. | Case No. 2:16-cv-01044-PA-KKx<br><br>**TP-LINK USA CORPORATION'S REPLY IN SUPPORT OF ITS OBJECTION TO APPLICATION OF ARI SCHARG TO APPEAR *PRO HAC VICE* [DKT. 119]; REQUEST FOR SANCTIONS**<br><br>[Filed concurrently with Second Declaration of Timothy Fox and Declaration of Harry Kim] |

# TABLE OF CONTENTS

I.    Introduction ................................................................................... 1

II.   Argument ........................................................................................ 2

    A.    Edelson and Mr. Scharg Have Used "Virtual" Offices to Flout the
        Local Counsel Requirement for at Least Six Years ............................ 2

        1.    The Local Rules Do Not Allow Local Counsel to Operate Out of
            Virtual Offices in this District ........................................................ 2

        2.    Mr. Scharg Filed his *Pro Hac Vice* Application Knowing He
            Lacked Proper Local Counsel ........................................................ 4

    B.    Mr. Scharg Cannot Obtain *Pro Hac Vice* Admission as He Admits
        that He Regularly Engages In the Practice of Law in California ......... 6

        1.    Edelson and Mr. Scharg have Abused the Privilege of *Pro Hac
            Vice* Admission ............................................................................ 6

        2.    All of Mr. Scharg's *Pro Hac Vice* Admissions in California Must
            Be Considered ............................................................................... 7

        3.    Edelson's Case Law Supports TP-LINK USA's Position ............ 9

    C.    Mr. Scharg's Does Not Offer a Credible Explanation Why His *Pro
        Hac Vice* Application Was Untimely and Incomplete ...................... 10

    D.    Mr. Scharg's Opposition Is Untimely .................................................. 11

    E.    Mr. Scharg's and Edelson's *Pro Hac Vice* Conduct Was Intentional,
        Requiring the Award of Sanctions ...................................................... 11

    F.    TP-LINK USA Has Not Used Sanctions Threats Lightly in This
        Action .................................................................................................. 13

III.  Conclusion ...................................................................................... 13

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3  *Curtis v. BCI Coca-Cola Enterprises Bottling Companies*, No. 13-cv-1939-AWI,

4     2014 WL 4417741 (E.D. Cal. Sept. 5, 2014) ................................................. 6

5  *Dupont Realty Corp. v. Evonik Degussa Corp.*, No. 09-cv-1896-SLT,

6     2009 WL 1708757 (E.D.N.Y. June 17, 2009) .......................................... 8, 9

7  *Frazier v. Heebe*, 482 U.S. 641 (1987) ..................................................... 6

8  *Guguni v. Chertoff*, No. 08-cv-1850-JL,

9     2008 WL 2080788 (N.D. Cal. May 14, 2008) .............................................. 8

10  *In re Poole*, 222 F.3d 618 (9th Cir. 2000) ................................................. 3

11  *Krapf v. Nationwide Credit Inc.*, No. 09-cv-00711-JVS,

12     2010 WL 4261444 (C.D. Cal. Oct. 21, 2010) .............................................. 9

13  *Moreno v. Autozone, Inc.,* No. 05-cv-04432-MJJ,

14     2007 WL 4287517 (N.D. Cal. Dec. 6, 2007) ............................................. 2, 3

15  *Pangborn v. Metlife, Inc.*, No. 09-cv-0976-DGT,

16     2009 WL 1617679 (E.D.N.Y. June 9, 2009) .............................................. 9

17  *Prescia v. Long Island R. Co*., No. 08-CV-3381 (FB),

18     2008 WL 4596201 (E.D.N.Y., Oct. 14, 2008) .......................................... 7, 8

19  *Spirit Locker, Inc. v. Evo Direct, LLC*, No. 09-cv-1582-JG,

20     2009 WL 1449062 (E.D.N.Y. May 22, 2009) .............................................. 9

21  *Tolchin v. Supreme Court Of New Jersey*, 111 F.3d 1099 (3d. Cir. 1997) ............... 3

22  **Rules**

23  C.D. Cal. R. 83-2.1.3.4 ......................................................... 2, 3

24  N.D. Cal. Civ. R. 11-3 ........................................................... 3

25

26

27

28

REPLY IN SUPPORT OF OBJECTION TO *PRO HAC VICE* APPLICATION

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. Introduction

Edelson PC ("Edelson") has shown a clear and intentional disregard for the *pro hac vice* rules of this Court. However, instead of claiming confusion or a misunderstanding of the *pro hac vice* rules and asking for forgiveness, Edelson and Mr. Scharg actually boast that they have been using these improper tactics to procure fraudulent *pro hac vice* admissions for the past *six years*. Moreover, they childishly argue that they should not be punished for their wrongdoing because other people supposedly do it too.

Edelson's response does not meaningfully dispute any of the facts put forward in TP-LINK USA Corporation's ("TP-LINK USA") Objection. To the contrary, Edelson, via its Response and two sworn declarations, paints an even more troubling picture of improper conduct before this and other courts than suspected and justifies the removal of Edelson from this case.

Local counsel Todd Logan is portrayed by Edelson's representations on its website and court filings as living in California and working out of Edelson's San Francisco office. However, Mr. Logan admits he **does not reside in California**, has never resided in California since he was employed by Edelson, spends **no time in Los Angeles**, and that no Edelson employees reside in Los Angeles or work out of its "virtual" office in Los Angeles. Despite living halfway across the country in Chicago, Mr. Logan is currently serving as "local" counsel for multiple attorneys in California, including a **non-Edelson attorney** seeking *pro hac vice* admission in this District.

Similarly, Mr. Scharg regularly and systematically engages in the unauthorized practice of law in California. Mr. Scharg admits that he has been admitted *pro hac vice* **28 times in California**. Moreover, Mr. Scharg's purported "explanation" for his untimely filed *pro hac vice* application is not credible and

does not excuse the fact that he should have sought leave of Court for his late filing in violation of this Court's Order.

Edelson and its attorneys have knowingly engaged in systematic and improper *pro hac vice* conduct with this and numerous other courts. Edelson's refusal to acknowledge the impropriety of their conduct confirms that, absent strong sanctions, this conduct will only continue. Accordingly, TP-LINK USA requests the Court disqualify Edelson from acting as counsel in this action and issue monetary sanctions for the costs TP-LINK USA has incurred in bringing this improper and pervasive conduct to the Court's attention.

**II. Argument**

**A. Edelson and Mr. Scharg Have Used "Virtual" Offices to Flout the Local Counsel Requirement for at Least Six Years**

**1. The Local Rules Do Not Allow Local Counsel to Operate Out of Virtual Offices in this District**

The Local Rules require that local counsel "maintains an office within the District." L.R. 83-2.1.3.4. Edelson argues that all it takes to satisfy this requirement is a location within the District that forwards mail and phone calls to an office in San Francisco. Dkt. 140 ("Resp.") at 9:2-5; 9:21-22. Edelson's primary support for this interpretation is that they have been using virtual offices to procure *pro hac vice* admissions since 2010. Resp. at 9:17-19. Edelson's interpretation of the rules is fallacious. Notably, Edelson does not mention that they have never pointed out to the court or opposing counsel that they were using virtual offices. As such, the mere fact that they have been doing something improperly for years does not justify their conduct. Moreover, Edelson's interpretation of the requirement would entirely eviscerate the purpose of the Local Rule.

*Moreno v. Autozone, Inc.,* No. 05-cv-04432-MJJ, 2007 WL 4287517, at *11 (N.D. Cal. Dec. 6, 2007) is directly on point here, holding that "[m]ere rented office space lacks any of the indicia of office location." *Id.* (citing *Tolchin v.*

1  *Supreme Court Of New Jersey*, 111 F.3d 1099, 1107 (3d. Cir. 1997)). Edelson

2  attempts, without success, to distinguish *Moreno* in two ways. Resp. at 8:20-9:5.

3  <u>First</u>, Edelson argues that *Moreno* is a Northern District case. *Id.* However, this

4  actually holds against Edelson as the Northern District's *pro hac vice* rules are

5  more lax than this District's.[1] <u>Second</u>, Edelson attempts to differentiate itself by

6  arguing that unlike the attorneys in *Moreno,* it maintains an office in San Francisco.

7  Resp. at 8:20-9:5. However, this is a distinction without a difference, as the Central

8  District specifically requires an office to be maintained *within the District* not just

9  within the state as required by the Northern District. Compare L.R. 83-2.1.3.4 with

10  N.D. Cal. Local Rule 11-3.

11      Realizing that *Moreno* holds against it, Edelson raises legal authority that is

12  inapplicable and does not support its position. For example, Edelson cites to the

13  California State Bar Standing Committee on Professional Responsibility and

14  Conduct, Formal Opinion No. 2012-184 (2012) for the proposition that attorneys

15  may maintain a virtual law office practice. Resp. at 9:11-16. But the Opinion says

16  no such thing. To the contrary, the Opinion expressly states that it does <u>not</u> address

17  questions of the unauthorized practice of law. *Id.* at n.5. Likewise, Edelson cites to

18  articles related to the ABA's rules regarding multijurisdictional practice. Resp. at

19  5:8-6:19. However, even assuming ABA articles could govern *pro hac vice*

20  admissions in this District,[2] Edelson does not state it actually complies with these

21  rules, only that it is "mindful of these rules." Resp. at 6:13.

22  _____

23  [1] Northern District of California Local Rule 11-3 requires that an attorney seeking *pro
hac vice* admission designate as co-counsel an attorney "who maintains an office within

24  the State of California," while Central District Local Rule 83-2.1.3.4 is more stringent
and requires that only an attorney who "maintains an office within the District" may be

25  designated as local counsel.

26
[2] Rules governing admission to federal courts are independent of those that govern

27  admission to practice in other courts. *In re Poole*, 222 F.3d 618, 620-22 (9th Cir. 2000)
("[A]s nearly a century of Supreme Court precedent makes clear, practice before federal

28  courts is not governed by state court rules.").

To justify its wrongdoing, Edelson points the finger at multiple other firms it alleges are engaged in similar games with their *pro hac vice* applications in this District. But, attempting to incriminate others does not excuse Edelson's own conduct.[3] Notably, in addition to the evidentiary problems with Mr. Scharg's Declaration, his conclusion is also fundamentally flawed as he puts forward no evidence that the firms listed in his Declaration do not actually maintain regular offices at the Regus Business Center.

In addition to providing virtual office functionality, the Regus Business Center also offers regular office space for rent. Second Declaration of Timothy Fox ("Second Fox Decl."), ¶ 6, Exh. D. In fact, Harry Kim, a partner at the law firm of Lee Anav Chung White & Kim LLP, previously rented and worked out of office space in the same building that was provided by Regent, which was later acquired by Regus. Mr. Kim attests that his firm did not have a virtual office, but rather rented a fully-functioning office space. Declaration of Harry Kim ¶¶ 2-4.

Edelson has established no reason why this Court should deviate from the holding reached by the Court in *Moreno*. A virtual office does not meet the requirements of the Local Rules for local counsel. Mr. Scharg's Application should be denied on this basis alone.

### 2. Mr. Scharg Filed his *Pro Hac Vice* Application Knowing He Lacked Proper Local Counsel

Mr. Logan's sworn declaration eviscerates any argument that Edelson legitimately believed it had legitimate local counsel who had an office or performed work within this District. Mr. Logan confirms in his declaration that he

---

[3] Edelson also tries to attack the credibility of the Fox Declaration in support of the opening Brief by asserting that his "table lists cases in which no Edelson attorney ever applied for *pro hac vice* admission." Resp. at fn. 6. Ignoring the fact that Edelson only lists five of the 97 cases listed in the Fox Declaration, Edelson's argument misses the mark because regardless of whether Edelson attorneys submitted *pro hac vice* applications in those matters, Edelson cannot deny its attorneys are listed as counsel in those matters.

1   lives in Chicago, does not spend time in Los Angeles, and that no one at Edelson
2   works in Los Angeles. Dkt. 133-2, Declaration of Todd Logan ("Logan Decl."),
3   ¶¶ 5-6.[4] Moreover, while Mr. Logan claims he works out of Edelson's San
4   Francisco office, he purposely omits how much time he spends in that office or
5   even in California. *Id.*, ¶ 4.

6   Indeed, despite Mr. Logan's complete lack of residency in California, he
7   also regularly serves as "local" counsel for Edelson in the Northern District of
8   California. Second Fox Decl., Exh. A. Even more troubling, Mr. Logan also serves
9   as local counsel ***for non-Edelson attorneys in this District***. *See id.* (Mr. Logan
10  currently serves as local counsel for Stefan L. Coleman with the Law Offices of
11  Stefan Coleman, LLC, an attorney who appears to reside in New Jersey).

12  Additionally, despite filing an appearance as local counsel in this action in
13  January 2016, Mr. Logan was not so much as copied on a single email related to
14  this case until March 23, 2016—three days *after* TP-LINK USA filed its objection
15  to Mr. Scharg's *pro hac vice* Application. Second Fox Decl., ¶ 3, Exh. B. It is clear
16  that had TP-LINK USA never objected to Mr. Scharg's Application, despite being
17  designated as local counsel, Mr. Logan would never have participated in this action.
18  This is not the role that local counsel is supposed to play. Even Edelson admits that
19  local counsel must "participate in the representation." Resp. at 6:11-12.

20  Apparently not understanding the incriminatory effect of Mr. Logan's
21  admissions, Edelson goes on to boast that it has gotten away with similar improper
22  conduct using virtual offices and absent local counsel since at least 2010. Resp. at
23  9:17-19; Scharg Decl., ¶¶ 17-18. Edelson should not be permitted to continue the
24
25

26  [4] Mr. Logan's declaration was not filed with Mr. Scharg's initial Response and Motion
27  to Seal that were ultimately stricken [Dkts. 132, 135], and it is missing from the
    subsequently filed redacted and un-redacted versions of Mr. Scharg's Response [Dkts.
28  136, 140]. The only place counsel for TP-LINK USA could locate Mr. Logan's
    declaration was attached to the improperly filed redacted version of Edelson's response.
    Dkt. 133-2.

1  use of virtual offices and non-resident local counsel as a means to bypass the rules

2  governing the definition of local counsel.

### B. Mr. Scharg Cannot Obtain *Pro Hac Vice* Admission as He Admits that He Regularly Engages In the Practice of Law in California

#### 1. Edelson and Mr. Scharg have Abused the Privilege of *Pro Hac Vice* Admission

7  The phrase *pro hac vice* means: "For this occasion or particular purpose."

8  *Curtis v. BCI Coca-Cola Enterprises Bottling Companies*, No. 13-cv-1939-AWI,

9  2014 WL 4417741, at *4 (E.D. Cal. Sept. 5, 2014) (citing Black's Law Dictionary,

10  1331 (9th ed. 2009)). "It is of special importance that the Supreme Court has

11  described pro hac vice attorneys as '[o]ne-time or occasional practitioners . . . .'"

12  *Id.* (citing *Frazier v. Heebe*, 482 U.S. 641, 651 n.13 (1987)).

13  Here, Mr. Scharg and Edelson have ignored this limitation and intentionally

14  flouted the requirements of this and other court's *pro hac vice* rules. Despite

15  acknowledging that his firm focuses on consumer technology class actions

16  primarily in Northern California, Mr. Scharg admits his firm waited until the end

17  of 2015 to finally open an office in California.[5] Resp. at 6:21-25. Moreover,

18  despite this heavy California practice, Edelson currently *only has one* attorney

19  licensed to practice law in California. Second Fox Decl., ¶ 4. This attorney, Todd

20  Logan, is a first-year associate who is apparently leaving the firm later this year for

21  a clerkship in the Northern District. Logan Decl., ¶ 5.

22  These facts may explain why Edelson has needed to obtain *pro hac vice*

23  admissions *at least 97* times and Mr. Scharg *at least 28 times* since 2009, but they

24

25

26  [5] A review of the cases filed by Edelson's in California since 2009 shows no sudden increase in filings or other reason to justify waiting until 2015 to open a San Francisco

27  office. To the contrary it appears the number of filings have decreased since 2011-2013. *See* Dkt. 121-1, Exh. 1 (Exhibit 1 to Declaration of Timothy Fox in Support of TP-LINK

28  USA's Objection to Ari Scharg's *Pro Hac Vice* Application).

do not excuse such an abuse of the *pro hac vice* privilege.[6] Far from using *pro hac vice* admission as the exception, Edelson appears to have used *pro hac vice* admissions as the rule. Moreover, this establishes that Mr. Scharg and his firm's improper *pro hac vice* conduct for the past six years has been intentional as Edelson has purposely built up a practice in California without any California-admitted attorneys.

## 2. All of Mr. Scharg's *Pro Hac Vice* Admissions in California Must Be Considered

In an attempt to distract from this inevitable conclusion, Mr. Scharg focuses on just the last three years of his *pro hac vice* admissions in this District, and ignores his other 27 admissions since 2009 and the 97 admissions of Edelson attorneys during this time. Resp. at 11:8-12:9. Mr. Scharg's attempt at misdirection fails for the simple reason that the Court must consider all admissions in California, not just those in this District in the past three years. L.R. 83-2.1.3.2 ("is regularly engaged in business, professional, or other similar *activities in California*") (emphasis added); *Prescia v. Long Island R. Co*., No. 08-cv-3381-FB, 2008 WL 4596201, at *1 (E.D.N.Y., Oct. 14, 2008) (denying *pro hac vice* admission in part on an admission nine years prior). Notably, Mr. Scharg puts forward no legal authority for his arbitrary time and scope limitations. Resp. at 11:8-12:9.

However, even accepting Mr. Scharg's arbitrary three-year limitation, Mr. Scharg admits that during this time he was admitted *pro hac vice* in California seven times.[7] Resp. at 12:13-15; Decl., ¶ 13, Exh. 1. This number of admissions is

---

[6] It is almost certain that the number of admissions obtained by Edelson attorneys is higher as shown by the fact that TP-LINK USA's prior searches failed to catch 11 *pro hac vice* admissions of Mr. Scharg.

[7] For the same reason Mr. Scharg's claim that he primarily practices law in the Midwest is irrelevant as it too is based on an artificial time period. Resp. at 12, n.7; Scharg Decl., ¶ 4. It is also curious that Mr. Scharg does not state his practice is primarily in Illinois, the one state in which he is actually admitted, but the Midwest in general. *Id.* It would not be surprising to find that Mr. Scharg is primarily using similar *pro hac vice* tactics to obtain admissions throughout the Midwest.

more than sufficient to show that Mr. Scharg is regularly engaged in business in California. In *Guguni v. Chertoff*, No. 08-cv-1850-JL, 2008 WL 2080788, at *1 (N.D. Cal. May 14, 2008), the Northern District held that an attorney appearing in *just five cases* over three years constituted being regularly engaged in the practice of law in California. Other courts have held that even fewer *pro hac vice* admissions were sufficient to find an attorney was regularly engaged in the practice of law in the state. Obj. at 6, nn.7-9. For example, in *Prescia*, the Court denied *pro hac vice* admission based on an attorney's three prior admissions over a nine year span, noting that *pro hac vice* admissions could not be requested "on a routine basis." *Prescia*, 2008 WL 4596201, at *1.

Edelson attempts to distinguish *Guguni* and the numerous other cases cited in TP-LINK USA's Objection by arguing that the attorneys in each of these cases also resided in the district for which they sought *pro hac vice* admissions. Resp. at 11:19-12:15. Edelson's purported distinction is irrelevant because in each of the cases cited the courts also specifically held that the attorney was regularly engaged in the practice of law due to his prior *pro hac vice* admissions. For example in *Guguni*, while the attorney did reside in California, the court still found that his five applications in less than three years was sufficient to find he *also* regularly engaged in the practice of law. *Guguni*, 2008 WL 2080788, at *1 ("Mr. Wong in his application failed to disclose that he resides in California *and regularly practices law here*.") (emphasis added).

Likewise, in *Dupont Realty Corp. v. Evonik Degussa Corp.*, No. 09-cv-1896-SLT, 2009 WL 1708757 (E.D.N.Y. June 17, 2009), despite noting that the attorney resided in the district, the court also held that three admissions in three and a half years *also* constituted being regularly engaged in the practice of law. *Id.* at *1 ("Tyson regularly engages in the practice of law in this district"). The same conclusion was reached by the courts in *Spirit Locker, Inc. v. Evo Direct, LLC*, No.

09-cv-1582-JG, 2009 WL 1449062, at *1 (E.D.N.Y. May 22, 2009) (attorneys resided in district *and* also were regularly engaged in practice of law) and *Pangborn v. Metlife, Inc.*, No. 09-cv-0976-DGT, 2009 WL 1617679, at *1 (E.D.N.Y. June 9, 2009) (same).

Mr. Scharg also argues that the large number of *pro hac vice* applications obtained by Edelson as a firm are irrelevant because *pro hac vice* admission applies to individuals, not law firms. Resp. at 10:22-11:7. Mr. Scharg's argument is wrong for the simple reason that Mr. Scharg's own Application shows that he was applying *pro hac vice* not for himself, but as an attorney of Edelson. Dkt. 119.

**3. Edelson's Case Law Supports TP-LINK USA's Position**

In closing, Mr. Scharg includes a citation to a single Central District case that he claims, without analysis, supports his position—*Krapf v. Nationwide Credit Inc.*, No. 09-cv-00711-JVS, 2010 WL 4261444 (C.D. Cal. Oct. 21, 2010). Resp. at 12:16-22. But, *Krapf* actually holds against Edelson on this matter.

In *Krapf*, following entry of summary judgment, the defendant objected to the fees requested by an out-of-state attorney who had performed consulting work on the case. *Krapf*, 2010 WL 4261444. The defendant argued that the attorney was regularly engaged in the practice of law in California and thus disqualified from fees as the attorney could not obtain *pro hac vice* admission before the court. *Id.* at *3. In rejecting the defendant's argument, the court noted that the attorney was involved in only a small number of appeals in California and thus not regularly engaged in business. *Id.* A review of the underlying declaration on which the court relied shows that the attorney had actually only ever been involved in three cases in California. Second Fox Decl., Exh. C (Second Declaration of Scott Cohen in Support of Plaintiff's Motion for Attorneys' Fees, ¶ 13). As such, if anything, *Krapf* actually holds against Mr. Scharg's position as he has been admitted *over nine times as often* as the attorney at-issue in *Krapf*.

The record and Mr. Scharg's own admissions make it readily apparent that Mr. Scharg and Edelson regularly engage in the practice of law in California. Accordingly, Mr. Scharg's Application should be denied.

**C. Mr. Scharg's Does Not Offer a Credible Explanation Why His *Pro Hac Vice* Application Was Untimely and Incomplete**

As pointed out in TP-LINK USA's Objection, Mr. Scharg's *pro hac vice* Application was untimely and incomplete. Obj. at 6:15-7:3. In response, Mr. Scharg states that his Application was untimely due to events outside of his control and that his omission from his *pro hac vice* application was inadvertent. Resp. at 13:1-20.

Mr. Scharg's explanation does not hold water for at least three reasons. First, Mr. Scharg fails to explain why the attorneys at his firm waited 28 days before finally filing a single *pro hac vice* application in this case. The Court ordered four Edelson attorneys, including Alexander Nguyen and Mr. Scharg, to file *pro hac vice* applications within 30 days of February 16, 2016—by March 17, 2016. Dkts. 97, 99. Mr. Nguyen waited until March 15—two days before this deadline—to finally file his *pro hac vice* application, which was ultimately stricken by the Court. Dkts. 115, 118. As such, any claim by Mr. Scharg that his delay in filing his *pro hac vice* Application was caused by events outside of his control is simply not true. He purposely chose to delay seeking *pro hac vice* admission and he must bear the consequences for this risk.

Second, Mr. Scharg fails to explain why he waited until three days after the clerk noted the deficiencies in Mr. Nguyen's application to finally file his own *pro hac vice* application. When the clerk noted the deficiencies in Mr. Nguyen's *pro hac vice* application on March 15, 2016, Mr. Scharg should have known at that time or at least within 24 hours whether he would need to file his own application. Dkt. 116. Mr. Scharg fails to explain why he waited three days after he received this notice to finally file his own *pro hac vice* application. Moreover, Mr. Scharg

1    failed to seek leave of Court to file his untimely *pro hac vice* application—

2    apparently another attempt to skirt this Court's Order.

3        <u>Finally</u>, Mr. Scharg fails to explain how his omission of his *pro hac vice*

4    admission in this District barely a month prior to his filing the current Application

5    was inadvertent or a clerical error. Mr. Scharg does not provide any details to

6    support his conclusion that this omission was not intentional. He does not indicate

7    who filled out his *pro hac vice* application or even indicate if he actually reviewed

8    it before signing it. Resp. at 13:1-20; Scharg Decl., ¶ 10. Without such explanation,

9    Mr. Scharg cannot argue his omission was inadvertent.

10    **D. Mr. Scharg's Opposition Is Untimely**

11       The Court ordered Mr. Scharg to file any response to its Order to Show

12    Cause by April 4, 2016. Dkt. 126 at 2. Mr. Scharg did not do so. Rather Mr. Scharg

13    filed an improper Motion to Seal at 11:59 p.m. on April 4, 2016, which was

14    stricken by the Court. Dkts. 132, 135. On April 5, 2016, Mr. Scharg filed a

15    redacted version of his response and another motion to seal, and finally served an

16    un-redacted version of his response on TP-LINK USA. Dkts. 133, 136, 139, 141.

17    As such, no timely response was filed by Mr. Scharg on April 4, 2016 as ordered

18    by the Court.

19       As with his *pro hac vice* application, Mr. Scharg chose to wait until the

20    eleventh hour to try to file his Response and missed the deadline. Again, in taking

21    this risk, he must abide by the consequences of his choice. The Court should

22    disregard Mr. Scharg's untimely Response.

23    **E. Mr. Scharg's and Edelson's *Pro Hac Vice* Conduct Was Intentional,**

24       **Requiring the Award of Sanctions**

25       Despite the above admissions, Mr. Scharg argues that neither he, nor any

26    Edelson attorney, has engaged in bad faith or willfully violated the Local Rules.

27    Resp. at 14:16-17. As discussed above, this is simply not true.

28

1  Moreover, Edelson, Mr. Scharg, and Mr. Logan's prior conduct in this
2  action shows that Edelson attorneys purposely worked to trick the Northern
3  District to grant improper *pro hac vice* admissions. To find this culpable conduct,
4  the Court need look no further than the briefs filed in this action *after* Edelson
5  opened its San Francisco Office on November 2, 2015. Scharg Decl., ¶ 7. Among
6  the Edelson attorneys who reside in this office are Alicia Hwang and the managing
7  partner of the firm, Rafey Balabanian.[8] *Id.* However, knowing that the Northern
8  District prohibited *pro hac vice* admissions of attorneys who resided within the
9  state, Ms. Hwang and Mr. Balabanian both continued to represent to the Northern
10 District court that they worked out of Edelson's Chicago office.[9] It was not until
11 March 2016, after Ms. Hwang and Mr. Balabanian had apparently sat for the
12 California Bar, that they finally admitted to this Court that they actually worked
13 out of Edelson's San Francisco office. *See* Dkt. 112 (caption listing Ms. Hwang,
14 Mr. Logan, and Mr. Balabanian as residing in Edelson's San Francisco office).
15 This conduct confirms that Edelson intentionally worked to deceive the Northern
16 District in order to maintain their *pro hac vice* admissions.

17  Moreover, the present case is not an anomaly for Edelson. As discussed in
18 TP-LINK USA's Objection and as admitted in Mr. Scharg's Declaration, Edelson
19 attorneys have appeared numerous times *pro hac vice* throughout this state. They
20 are well aware of the *pro hac vice* requirements, and apparently have discovered
21 how to end-run these requirements in order to obtain improper *pro hac vice*
22 admissions. And, even more troubling, have engaged in such conduct for at least
23 the past six years according to Mr. Scharg.

24
25 [8] Rafey Balabanian has been extensively involved in this action and is listed as the
26 Managing Partner of the firm on Edelson's website. Second Fox Decl., ¶ 7, Exh. E.

27 [9] None of Edelson's filings in the Northern District between November 2015 and
28 February 2016 list Ms. Hwang or Mr. Balabanian at Edelson's San Francisco office, but
rather list the Edelson's Chicago office. *See* Dkts. 54, 55, 56, 57, 58, 60, 66, 67, 68, 71,
77, 78, 80, 83, 85, 86, 87, and 92.

Edelson attorneys have repeatedly flaunted this Court's and other courts' *pro hac vice* requirements. Moreover, Edelson and Mr. Scharg show no remorse for their wrongful conduct. Nothing short of strong sanctions from this Court will teach them otherwise. Accordingly, TP-LINK USA requests the Court disqualify all Edelson attorneys as counsel in this matter and award monetary sanctions against Edelson and Mr. Scharg in the amount of $5,850—which is the amount TP-LINK USA incurred in researching and drafting its objection and response. Second Fox Decl., ¶ 9, Exh. G.

**F. TP-LINK USA Has Not Used Sanctions Threats Lightly in This Action**

Edelson attempts to spin its conduct as being the fault of TP-LINK USA's purportedly over-zealous counsel. As the record shows, this is simply not true. Outside of this current request, TP-LINK USA has never formally sought sanctions against Plaintiff or his counsel. Edelson should not be allowed to distract from its own improper conduct by inventing conduct on the part of TP-LINK USA.

**III. Conclusion**

The facts in this matter are clear. Mr. Scharg and Edelson's conduct warrant an award of sanctions and removal from this case.

Dated: April 8, 2016                    Respectfully submitted,

                                        **LEE TRAN & LIANG LLP**

                                        By:

                                        /s/ *Heather F. Auyang*
                                        James M. Lee
                                        Kevin M. Bringuel
                                        Heather F. Auyang
                                        Timothy S. Fox
                                        *Attorneys for Defendant*
                                        *TP-LINK USA Corporation*